## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW HAMPSHIRE

Warren Picard

      v.                                    Civil No. 09-cv-259-PB

James O'Mara, Superintendent,
Hillsborough County Department
of Corrections, et al.[1]

### REPORT AND RECOMMENDATION

Before the court is Warren Picard's complaint (document nos.
1, 3 & 4), filed pursuant to 42 U.S.C. § 1983, alleging that
defendants, all employees of the Hillsborough County Department
of Corrections ("HCDOC"), violated his constitutional rights
during his incarceration.  The matter is before me for
preliminary review to determine, among other things, whether or
not the complaint states any claim upon which relief might be
granted.  See 28 U.S.C. § 1915A; United States District Court
District of New Hampshire Local Rule ("LR") 4.3(d)(2).

---

[1]In addition to O'Mara, the narrative of the complaint makes
apparent the following individuals are intended defendants in
this action: Corrections Officer ("C.O.") Robinson (first name
unknown ("FNU")), C.O. FNU Baldwin, C.O. FNU Dusenbaum, and C.O.
FNU Dornall.  I construe the complaint to name each of these
individuals as defendants to this action.

Standard of Review

Under this Court's local rules, when an incarcerated person commences an action pro se and in forma pauperis, the Magistrate Judge conducts a preliminary review.  LR 4.3(d)(2).  In conducting the preliminary review, the Court construes all of the factual assertions in the pro se pleadings liberally, however inartfully pleaded.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pro se pleadings liberally in favor of the pro se party).  "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled."  Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); see also Castro v. United States, 540 U.S. 375, 381 (2003) (courts may construe pro se pleadings to avoid inappropriately stringent rules and unnecessary dismissals).  This review ensures that pro se pleadings are given fair and meaningful consideration.

To determine if a pro se complaint states any claim upon which relief could be granted, the Court must consider whether the complaint, construed liberally, Erickson, 551 U.S. at 94,

"contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Inferences reasonably drawn from the plaintiff's factual allegations must be accepted as true, but the Court is not bound to credit legal conclusions, labels, or naked assertions, "devoid of 'further factual enhancement.'"  Id. (citation omitted).  Determining if a complaint sufficiently states such a claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 1950 (citation omitted).

<u>Background</u>

Warren Picard was an inmate at the HCDOC from November 30, 2008 until May 15, 2009.  Picard had previously been incarcerated at the HCDOC in 1995 and 2005.  During Picard's previous incarcerations, he filed federal civil rights lawsuits against the HCDOC and employees thereof.[2]  The 1995 lawsuit was resolved

---

[2]See Picard v. Pa. Inst'l Health Servs., Inc., Civ. No. 95-cv-387-SM (naming, inter alia, HCDOC Superintendent James O'Mara

3

by settlement in 1997.  <u>See</u> <u>Picard v. Pa. Inst'l Health Servs.,</u>
<u>Inc.</u>, Civ. No. 95-cv-387-SM (Stipulation of Dismissal filed upon
settlement) (D.N.H. Sept. 15, 1997).  The first 2005 lawsuit was
dismissed after preliminary review.  <u>See</u> <u>Picard v. Hillsborough</u>
<u>County Dep't of Corrs. Med. Dep't</u>, Civ. No. 05-cv-068-JD (Order
Approving Report and Recommendation) (D.N.H. Apr. 21, 2005).  In
the second 2005 suit, summary judgment was awarded in defendants'
favor.  <u>See</u> <u>Picard v. Hillsborough County Dep't of Corrs., et</u>
<u>al.</u>, Civ. No. 05-cv-234-SM (Order on Defendants' Motion for
Summary Judgment) (D.N.H. Dec. 14, 2006).

On November 30, 2008, Picard was admitted to the HCDOC as a
pretrial detainee.  He was a pretrial detainee until December 24,
2008, when he was sentenced to two ninety-day terms in the HCDOC.
Picard was released from incarceration on May 15, 2009.

Upon his intake at the HCDOC, Picard refused to go through
medical intake.  As a result, he was placed in the Restricted
Housing Unit ("RHU") for thirty days.  While he was housed on
RHU, Picard states that he was told by various C.O.s that he
would remain on that unit until he complied with the HCDOC's

---

as a defendant); <u>Picard v. Hillsborough County Dep't of Corrs.</u>
<u>Med. Dep't</u>, Civ. No. 05-cv-068-JD; <u>Picard v. Hillsborough County</u>
<u>Dep't of Corrs.</u>, Civ. No. 05-cv-234-SM.

medical intake process.  While he was in RHU, Picard states that

C.O.s Robinson and Dornall told other inmates that Picard was

being quarantined at RHU because he was a "fag" and had AIDS.

These statements caused Picard to fear for his physical safety

from other inmates who he believed might lash out against him if

they believed he was gay.[3]  Picard also complains that while in

RHU he was forced to shower in a stall without a curtain, that

there was no working fire sprinkler in his cell as HCDOC

_____

[3]Picard also refers to a John Doe C.O. participating in this
verbal harassment.  If Picard intends to include the John Doe
officer in this action, he must identify the officer by name.
Upon service of this action on the named defendants, Picard can
serve defendants with interrogatories to obtain the name of the
John Doe officer pursuant to Fed. R. Civ. P. 33(a) which states
in pertinent part:

> Without leave of court or written stipulation,
> any party may serve upon any other party
> written interrogatories, not exceeding 25 in
> number including all discrete subparts, to be
> answered by the party served or, if the party
> served is a public or private corporation or a
> partnership or association or governmental
> agency, by an officer or agent, who shall
> furnish such information as is available to
> the party.

Once the officer's name is obtained, Picard may file a motion to
amend his complaint to add the officer as a defendant to this
action.  At that time, Picard must state with specificity what
that officer did that violated Picard's constitutional rights.
If the motion to amend is granted, the Clerk's office will effect
service of the officer as set out in my Order, issued this date,
directing service.

officials had capped it due to inmates setting off fire
sprinklers in the past, and that he experienced mental stress due
to inmates throwing feces around the unit and the light being on
twenty-four hours a day.

Picard states that during his incarceration, C.O.s Baldwin,
Dornall, and Robinson frequently inquired into and made
statements about Picard's sexual preference, using derogatory and
vulgar language.  Specifically, Picard states these C.O.s
repeatedly asked him questions such as: "Are you a fag?" "Do you
suck dick?" and "Picard, you gonna suck cock this time around?"
and made statements such as: "Picard is a faggot and likes men,"
"You're such a fag, Picard," and "Picard is a queer."  The
officers intentionally said these things in areas where other
inmates and C.O.s could hear them.

On one occasion, Picard states he heard C.O. Robinson say to
other C.O.s, "Watch what you say cause he will sue you,"
referring to Picard.  Picard states that he has known Robinson
for a number of years due to his repeated incarcerations at the
HCDOC and that Robinson is aware of Picard's previous litigation
against the HCDOC.  Picard claims that Robinson believes Picard
is gay, and that Robinson has a bias against him for that reason.

Picard alleges that he has a shoulder injury which was documented in his HCDOC medical records.  Picard states that he receives Social Security disability benefits for his injury.  The injury restricts the amount and type of work he is capable of doing.  Despite his known physical limitations, however, Picard alleges that in April and May 2009, C.O. Dusenbaum consistently forced Picard to clean the entire medical unit, where he was then housed, and threatened Picard with disciplinary write-ups if he failed to do so.  Dusenbaum further threatened that a write-up would result in Picard's transfer to maximum security.  When Picard reminded Dusenbaum of his physical injury and limitations, Dusenbaum replied, "So what?"  Picard states that his shoulder injury has worsened due to being forced to work beyond his medical restrictions.

Picard states that O'Mara declined to grant him "good time" although he received no disciplinary write-ups during this incarceration.  While Picard concedes that O'Mara could deny him good time if O'Mara feels that, based on his recidivism, Picard is a risk to reoffend, Picard believes that O'Mara was actually

retaliating against him for past lawsuits against HCDOC and

O'Mara by denying him good time.[4]

Discussion[5]

I.   <u>Section 1983 Claims</u>

Section 1983 creates a cause of action against those who,

acting under color of state law, violate federal constitutional

or statutory law.   <u>See</u> 42 U.S.C. § 1983[6]; <u>City of Okla. City v.</u>

---

[4]Picard claims that in 2005, O'Mara granted him good time
even though he had more than fifty disciplinary write-ups, and
that his 2009 denial of good time was thus retaliatory, as he had
no write-ups during the 2008-2009 incarceration.  Picard,
however, then goes on to attribute O'Mara's 2005 grant of good
time to O'Mara's effort to diminish any implication of bias
against Picard for purposes of positioning himself well in
Picard's 2005 lawsuits against the HCDOC.  O'Mara's grant of good
time in 2005, however motivated, is not relevant to my
determination of whether or not Picard has, in this action,
sufficiently alleged retaliation in the denial of good time to
state a claim upon which relief might be granted.

[5]The claims, as identified herein, will be considered to be
the claims raised in the complaint for all purposes.  If Picard
disagrees with the claims as identified, he must do so by
properly moving to amend his complaint.

[6]42 U.S.C. § 1983 provides that:

> Every person who under color of any statute,
> ordinance, regulation, custom, or usage, of any
> State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of
> the United States or other person within the
> jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party

<u>Tuttle</u>, 471 U.S. 808, 829 (1985); <u>Wilson v. Town of Mendon</u>, 294 F.3d 1, 6 (1st Cir. 2002).  In order for a defendant to be held liable under § 1983, his or her conduct must have caused the alleged constitutional or statutory deprivation.  <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 692 (1978); <u>Soto v. Flores</u>, 103 F.3d 1056, 1061–62 (1st Cir. 1997).  Here, Picard claims that defendant HCDOC employees are state actors, and that they violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution.  Picard's claims, therefore, arise under § 1983.

II.  <u>Picard's Incarcerative Status</u>

From November 30, 2008 until December 24, 2008, Picard was a pretrial detainee at the HCDOC.  Picard's civil rights claims arising then must be analyzed under the Fourteenth Amendment. <u>See, e.g.</u>, <u>Lyons v. Powell</u>, 838 F.2d 28, 29 (1st Cir. 1988) (per curiam) (rejecting an Eighth Amendment challenge to pretrial detention).  Detainees have a constitutional right under the Due Process Clause of the Fourteenth Amendment to be free of punishment.  <u>See</u> <u>Surprenant v. Rivas</u>, 424 F.3d 5, 15 (1st Cir. 2005) (citing <u>O'Connor v. Huard</u>, 117 F.3d 12, 15 (1st Cir.

_____

injured in an action at law . . . .

1997)).  "'[T]he State does not acquire the power to punish with
which the Eighth Amendment is concerned until after it has
secured a formal adjudication of guilt in accordance with due
process of law.'"  Martinez-Rivera v. Ramos, 498 F.3d 3, 9 (1st
Cir. 2007) (quoting Ingraham v. Wright, 430 U.S. 651, 671-72 n.40
(1977).  However, challenged conditions or restrictions which
can be rationally related to some legitimate administrative goal
or security concern generally will not be deemed unconstitutional
"punishment."  O'Connor, 117 F.3d at 15.  Because the Due Process
Clause prohibits the infliction of punishment on a person prior
to a judgment of conviction, the issue in evaluating claims by a
pretrial detainee is ultimately whether the conditions of
confinement were reasonably related to a legitimate state
interest or were intended instead as punishment for the
detainee's charged offense.  See Surprenant, 424 F.3d at 13;
Collazo-Leon v. U.S. Bureau of Prisons, 51 F.3d 315, 317 (1st
Cir. 1995).

      On December 24, 2008, Picard was sentenced.  Prison
conditions of sentenced inmates are scrutinized under the Eighth
Amendment, which protects against the infliction of cruel and
unusual punishment.  See Farmer v. Brennan, 511 U.S. 825, 832

(1994); Burrell v. Hampshire County, 307 F.3d 1, 7 (1st Cir.
2002).  The Eighth Amendment prohibits any punishment which
violates civilized standards of decency or involves the
"unnecessary and wanton infliction of pain."  Ingraham, 430 U.S.
at 670 (quoting Estelle, 429 U.S. at 97, 102-03).[7]

III. Conditions of Confinement

     Picard alleges that upon refusing medical intake, he was
housed in RHU and subjected to unconstitutional conditions of
confinement.  "A pretrial detainee's claim that he has been
subjected to unconstitutional conditions of confinement
implicates Fourteenth Amendment liberty interests."  Surprenant,
424 F.3d at 19; see Cameron v. Tomes, 990 F.2d 14, 18 (1st Cir.
1993) ("It is settled that those who are confined by the state,
for whatever reason, are entitled under the Constitution to food,
clothing, medical care, and reasonable efforts to secure physical

---

     [7]To the extent that Picard's complaint discusses events
prior to December 24, 2008, I find that his assertions that are
sufficient to state a claim for a violation of Picard's
Fourteenth Amendment right to be free of punishment are also
sufficient to state a claim under Picard's Eighth Amendment right
to be free from cruel and unusual punishment.  To the extent,
therefore, that there is any uncertainty as to the date of the
events alleged by Picard, and therefore as to the standard to
apply in considering the claim, it is immaterial to my
determination of whether or not Picard has stated facts
sufficient to assert a cognizable claim.

safety."). To establish that conditions of confinement are unconstitutional, a pretrial detainee must first demonstrate that, when viewed objectively, the challenged conditions "deny him the minimal measure of necessities required for civilized living." Surprenant, 424 F.3d at 18. Second, the plaintiff must show that the defendant against whom the violation is alleged was deliberately indifferent to the inmate's health or safety. Id. at 18-19. Here, Picard alleges that while at RHU, he was denied a private shower and the protection of working fire sprinklers, subjected to inmates throwing feces into the hallway and twenty-four hours per day of light, and that he was verbally harassed in a way that endangered his safety.

    A.   Incarceration at RHU

    Picard alleges that he was improperly held in the RHU because he refused to participate in the HCDOC's medical intake process. Picard asserts that he should have been quarantined in the medical department at the HCDOC rather than in the more restrictive RHU.

    Prisons may impose restrictions on pretrial detainees if those restrictions are related to a governmental purpose other than punishing the inmate for a crime before conviction. See

<u>Bell v. Wolfish</u>, 441 U.S. 520, 538–39 (1979).  Even if Picard was not held in the most comfortable available housing unit during his pretrial incarceration, Picard states no facts indicating he was sent to RHU as punishment for his underlying criminal charges, rather than as a response to his institutional behavior in failing to cooperate with the jail's intake process. Accordingly, I find that Picard has not alleged that his placement in the RHU was unconstitutional, or deprived him of a protected liberty interest.  Accordingly, I recommend the dismissal of Picard's due process claim challenging his RHU placement.

    B.   <u>Fire Sprinklers</u>

    Picard states he was held in a cell without a working sprinkler system, which presented an unconstitutional threat to his safety.  The state has a constitutional duty to provide prisoners with a reasonably safe environment.  <u>See</u> <u>DeShaney v. Winnebago County Dep't of Soc. Servs.</u>, 489 U.S. 189, 200 (1989) ("[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs – e.g. . . . reasonable safety – it

13

transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.") (citation omitted).  In cases of environmental risks to prisoners, a prison condition may be deemed actionable if it poses "an unreasonable risk of serious damage to [the inmate's] future health."  Helling v. McKinney, 509 U.S. 25, 35 (1993).

"Courts have held that '[t]he absence of adequate and reliable fire protection [in prisons] can give rise to a Fourteenth Amendment Due Process claim.'"  Shine v. Hofmann, 2009 WL 2179969, *8 (D. Vt. 2009) (quoting Benjamin v. Kerik, 1998 WL 799161, at *4 (S.D.N.Y. Nov. 13, 1998)); see also Coniglio v. Thomas, 657 F. Supp. 409, 414 (S.D.N.Y. 1987) (collecting cases); but see Harrison v. Ienuso, 1995 WL 375915, at *2 (S.D.N.Y. 1995) (inmate's hypothesis that his life would be jeopardized in the event of a fire due to inadequate fire protection insufficient grounds to state a claim for relief).  Picard has asserted that the fire sprinkler in his cell was capped, placing him in danger in the event of a fire.  The allegations in the complaint are, at this time, insufficient for me to determine definitively whether or not the HCDOC housed Picard without adequate fire protection or whether there were other measures in place sufficient to

14

protect Picard in the event of a fire.  At this stage of the
proceedings, however, I cannot rule out the possibility that the
HCDOC, by capping fire sprinklers, failed to reasonably and
adequately protect Picard from the risk of serious harm.
Accordingly, I will allow this Fourteenth Amendment claim for
unconstitutional conditions of confinement to proceed.  In my
Order issued simultaneously with this Report and Recommendation
(the "Simultaneous Order") I will direct that this claim be
served on James O'Mara, the Superintendent of the HCDOC, as he is
the official responsible for ensuring the safety and security of
HCDOC inmates.

     C.   <u>Other Conditions of Confinement</u>

     Picard claims that his rights were violated in the RHU when
he was denied a shower curtain, and forced to live on a unit
where lights always remained on and inmates threw feces.  While
Picard certainly describes uncomfortable conditions, I cannot
find that the facts alleged indicate that Picard was subjected to
those conditions by the defendants in order to inflict pre-
conviction punishment on him.  Accordingly, I cannot find that
Picard's allegations concerning the unpleasant conditions in RHU

15

state any claim of constitutional dimension, and I recommend that this claim be dismissed from this action.

II.  Forced Physical Labor

Picard claims that he came to the HCDOC with a disabling shoulder injury which limited his ability to work.  The HCDOC medical department and C.O. Dusenbaum were both aware of Picard's injury and work limitations.  Despite this knowledge, Picard alleges Dusenbaum forced him to perform cleaning work for several hours at a time, the demands of which exceeded his medical restrictions.  As a result, Picard claims, his injury worsened. "[P]rison work requirements which compel inmates to perform physical labor which is beyond their strength, endangers their lives, or causes undue pain constitute cruel and unusual punishment."  Howard v. King, 707 F.2d 215, 219 (5th Cir. 1983). A prison official's decision, knowing of an inmate's injury, to require the inmate to perform labor that the officer knows may significantly aggravate a serious physical ailment can constitute deliberate indifference to the inmate's serious medical needs. See Calhoun v. Hargrove, 312 F.3d 730, 734–35 (5th Cir. 2002) (finding claim sufficient to survive a motion to dismiss where prison official purportedly knew about medical work restriction

but forced inmate to work in excess of restriction, causing inmate's condition to worsen).  I find that Picard has stated sufficient facts to allow this claim, alleging violations of his Eighth and Fourteenth Amendments for deliberate indifference to his serious medical needs, to proceed against Dusenbaum.

III. <u>Verbal Harassment and Endangerment</u>

    A.   <u>Verbal Harassment</u>

    In general, nonphysical abuse or harassment does not invoke constitutional protection.  <u>See</u> <u>Shabazz v. Cole</u>, 69 F. Supp. 2d 177, 198–201 (D. Mass. 1999) (citing authority to explain that racial slurs and verbal threats do not violate a prisoner's constitutional rights).  Picard alleges here that he was subjected to derogatory, discriminatory, and vulgar name–calling and taunting by C.O.s Dornall, Robinson, and Baldwin.  Picard's assertions, if true, describe unprofessional and reprehensible conduct on the part of the defendant C.O.s but fall short of alleging behavior that is unconstitutional.  Accordingly, I recommend that Picard's verbal harassment claims be dismissed from this action.

B.   Endangerment

The safety and security of all prisoners is protected by the Constitution.  See DeShaney, 489 U.S. at 190; Youngberg v. Romeo, 457 U.S. 307, 315–16 (1982).  C.O.s have a duty to protect prisoners from violence at the hands of other prisoners, Farmer, 511 U.S. at 833, and must "take reasonable measures to guarantee the safety of the inmates" in their care.  Hudson v. Palmer, 468 U.S. 517, 526–27 (1984).  Deliberate indifference to an inmate's safety needs is actionable under section 1983.  See Farmer, 511 U.S. at 835 (prison officials have duty to protect prisoners from violence "at the hands of other prisoners").  An inmate does not have to wait until he or she is actually assaulted before obtaining relief.  See Benefield v. McDowall, 241 F.3d 1267, 1271–72 (10th Cir. 2001) (citing Woodhous v. Virginia, 487 F.2d 889, 890 (4th Cir. 1973) ("A prisoner has a right, secured by the eighth and fourteenth amendments, to be reasonably protected from constant threat of violence and sexual assault by his fellow inmates, and he need not wait until he is actually assaulted to obtain relief.")).

To state a constitutional claim that the defendant C.O.s endangered him, Picard must allege that the defendants were aware

18

of and deliberately indifferent to a serious risk to his safety.
See Burrell, 307 F.3d at 7.  Picard asserts that the officers'
numerous announcements to the inmate population that Picard is a
homosexual and engages in homosexual activity created a very real
threat of violence at the hands of other inmates, a fact that
would be known to the offending officers.  Accordingly, I find
that Picard has stated the minimum facts necessary to allow his
endangerment claim to proceed against defendants Dornall,
Baldwin, and Robinson.

IV.  Retaliation

Picard claims that the verbal harassment to which he was
subjected and the denial of his good time were both acts taken in
retaliation for his prior litigation against the HCDOC and its
employees.  To state a federal civil rights claim for
retaliation, Picard must allege: (1) that the conduct which led
to the alleged retaliation was protected by the exercise of a
right guaranteed to him by the federal constitution or other
federal law, (2) some adverse action at the hands of prison
officials, and (3) a causal link between the exercise of his
protected right and the adverse action.  See Price v. Wall, 428
F. Supp. 2d 52, 55 (D.R.I. 2006) (setting out elements of a

retaliation claim); see also McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979) (discussing pleading requirements for retaliation claims by prisoners); Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) ("[G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right."); LaFauci v. N.H. Dep't of Corr., No. Civ. 99-597-PB, 2005 WL 419691, at *7 (D.N.H. Feb. 23, 2004) (Unpublished Order); Oropallo v. Parrish, No. 93-1953, 1994 WL 168519, at *3 (D.N.H. May 5, 1994) (citing Ferranti v. Moran, 618 F.2d 888, 892 n.4 (1st Cir. 1980) ("[A]ctions otherwise supportable lose their legitimacy if designed to punish or deter an exercise of constitutional freedoms.") (internal citation omitted)).  I consider each of these elements of a retaliation claim in turn.

The right to petition the government for a redress of grievances has been characterized as "among the most precious of the liberties safeguarded by the Bill of Rights."  United Mine Workers v. Ill. State Bar Ass'n, 389 U.S. 217, 222 (1967).  In the prison context, this right means that inmates must be permitted access to both administrative and judicial forums for

the purpose of seeking redress of grievances against state

officers.  See Woodford v. Ngo, 548 U.S. 81, 122 (2006)

(prisoners retain First Amendment right to access courts to

redress grievances) and Fogle v. Pierson, 435 F.3d 1252, 1264

(10th Cir. 2006) (citing Hines v. Gomez, 853 F. Supp. 329, 331

n.5 (N.D. Cal. 1994) (collecting cases where courts have

recognized use of prison administrative grievance procedures as

an exercise of an inmate's First Amendment right to petition the

government for a redress of grievances)).  Picard's prior suits

against the HCDOC were, accordingly, an exercise of his

constitutional right to petition the government for a redress of

grievances.

Picard alleges that the defendant C.O.s took adverse actions

against him when they harassed him verbally and endangered his

safety.  Picard further alleges that O'Mara took adverse action

against him by denying him good time.  These actions, whether or

not they might be appropriately taken in certain situations, are

certainly adverse to Picard.

Finally, Picard must allege facts that the defendants

possessed retaliatory intent, by demonstrating a causal link

between Picard's exercise of his constitutional rights and the

imposition of adverse actions by defendants.  Picard alleges that

a number of officers verbally harassed him at the HCDOC.  Picard

identifies only Robinson, however, as making any reference to

Picard's prior lawsuits.  Picard specifically identifies Robinson

as an individual that he knows from his previous HCDOC

incarcerations.  Picard also states that Robinson made specific

reference to Picard's prior lawsuits in the context of subjecting

him to verbal harassment.  While these facts are sparse, for

purposes of preliminary review, I find that they are sufficient

to assert a retaliation claim against Robinson, but not against

any other C.O.s, for retaliation.  I will direct that this claim

be served on Robinson in my Simultaneous Order.  I recommend that

any retaliation claim asserted against C.O.s Dornall and Baldwin

be dismissed as Picard has failed to state any facts

demonstrating retaliatory intent of these two C.O.s.

Picard also asserts that O'Mara denied him good time to

retaliate against him for his previous lawsuits.  As evidence of

the causal link between the denial of good time and his previous

litigation, Picard points to the fact that he has previously been

granted good time on other sentences despite having worse

disciplinary records while serving the other sentences.  That

fact alone is insufficient to support an assertion of a causal link between O'Mara's adverse action and Picard's former exercise of his constitutional rights.  In fact, Picard offers two alternative explanations for his failure to receive good time: his recidivism and risk to reoffend, and O'Mara's attempt to appear unbiased against Picard in 2005 when he then granted good time.  Because of the dearth of factual support in the complaint for Picard's retaliation claim against O'Mara, particularly when viewed in light of the plausible alternative explanations for the denial of good time, I recommend that the claim be dismissed.

## Conclusion

For the foregoing reasons, I recommend dismissal of the RHU conditions claims, the RHU placement claim, and the verbal harassment claims from this action.  I further recommend that O'Mara, Baldwin and Dornall be dismissed from Picard's retaliation claims.  In my Simultaneous Order, I will direct service of the capped fire sprinkler claim against O'Mara, the forced labor claim against Dusenbaum, the endangerment claims against Robinson, Baldwin, and Dornall, and the retaliation claim against Robinson.

Any objections to this report and recommendation must be filed within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order.  See Unauth'd Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

James R. Muirhead
United States Magistrate Judge

Date:      December 11, 2009

cc:        Warren Picard, pro se

JM:jba